### UNITED STATES of America
### v.
### George COBBS, Appellant,
### and
### Charles Julius Thomas.
### No. 72–2023.

United States Court of Appeals, Third Circuit.

Argued April 2, 1973.

Decided June 28, 1973.

Certiorari Denied Oct. 23, 1973. See 94 S.Ct. 298.

---

Martin W. Sheerer, McGregor, Dillman, Sheerer & Schuchert, Pittsburgh, Pa., for appellant.

Samuel J. Orr, III, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ROSENN and HUNTER, Circuit Judges, and BECHTLE, District Judge.

## OPINION OF THE COURT

BECHTLE, District Judge.

Appellant, George Cobbs, was charged in a two-count indictment with bank robbery and putting lives in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. §§ 2113(a) and 2113(d). The indictment was returned against appellant on March 10, 1972. He was tried and found guilty by a jury on June 26, 1972. This appeal has followed from that conviction. The facts are essentially as follows:

On March 6, 1972, two men robbed the Forest Hills office of the Regent Savings and Loan Association and $1,323 was taken. The victims of the robbery, Mrs. Trude Smith and Mrs. Margaret Morgan, both employees of the bank, were the only eyewitnesses. The two employees testified at trial that one robber entered the bank, conversed with one of them for a short time, then declared that it was a "stickup." The second robber entered the bank carrying a handgun, whereafter the robbery was consummated. During the course of the robbery, the bank's surveillance camera became activated, taking pictures of the unmasked men. These pictures were admitted into evidence.

Appellant Cobbs was arrested at his residence in Braddock, Pennsylvania, on March 27, 1972, for the above-described robbery.[1] The arrest was based on the positive identification of Cobbs by Mrs. Morgan, an employee of the bank at the time of the robbery. The identification of Cobbs as a suspect in the robbery consisted of Mrs. Morgan's selection of appellant's picture from a certain number of criminal identification photographs shown to her by Special Agent McCarthy of the Federal Bureau of Investigation (FBI). At the time of his arrest, Cobbs was informed of his constitutional rights and signed a waiver of rights form. During the automobile ride from Braddock to the Federal Building in Pittsburgh and after the waiver form had been signed, implicating statements were made by the appellant. Agent McCarthy testified that on the way to Pittsburgh appellant asked how much money had been stolen in the robbery. After being informed by the Agent as to what was stolen, the appellant responded, "You mean he got that, too" and later at the FBI office when told how much was taken the appellant stated, "I only got $150 or $175 out of that."

Further incriminating statements, tantamount to an oral confession, were made by Cobbs when Agent McCarthy visited him in the Allegheny County Jail on March 29, 1972, two days after the arrest.

Appellant's initial contention on appeal is that the photographic lineup was not shown to the Government witness, Mrs. Morgan, until after the indictment had been returned against him and, as such, so infected her testimony that her subsequent in-court identification should not be permitted. The exact time of the photographic lineup is somewhat in dispute. The Government contends that the photographs were shown to the witness on March 8, 1972, two days after the robbery and two days before the return of the indictment on March 10, 1972, as testified to by the FBI Agent who showed the photographs to the witness. Appellant relies on the testimony of Mrs. Morgan to support his argument that the lineup occurred after the indictment had been returned. Mrs. Morgan testified that she could not say exactly when she had been shown the photographs, but it was "about a week after the robbery." Although there is a conflict in the evidence, the exact time

---

1. Two men have been indicted for the robbery, one of whom has not yet been apprehended.

of the lineup is inconsequential. That the photos were shown after the indictment had been returned does not *per se* render the witness' identification testimony inadmissible. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967); United States ex rel. Reed v. Anderson, 461 F.2d 739 (3rd Cir. 1972).

██ Unless evidence of identification is of an independent origin, it will not be received if the circumstances of a pretrial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification at the trial. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1968).

██ As recited in detail by the trial judge's opinion, there is no evidence on the record in this case that the pretrial identification procedures were so inherently unfair or impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Absent such a showing, evidence of even post-indictment photographic identification will not render in-court identification inadmissible.

Appellant further contends that the custodial interrogation conducted by Agent McCarthy of the FBI, which occurred after counsel had been appointed but without notice to or permission of counsel, violated appellant's right to counsel as guaranteed by the Sixth Amendment and that incriminating statements made by the appellant in the course of the interrogation should be declared inadmissible.

On March 29, 1972, two days after appellant's arrest, Agent McCarthy visited him in the Allegheny County Jail. The Agent read the *Miranda* warnings and took a written waiver from the appellant. The appellant then proceeded to state orally that he and another man had in fact committed the robbery in question and described to the FBI Agent the details surrounding the event. The trial court determined that the oral confession had been intelligently and voluntarily made and permitted the same testimony to be repeated in the presence of the jury. We agree with the decision of the lower court.

██ The fact that a defendant has an attorney does not mean that law enforcement officials cannot procure a statement of any kind from the defendant without prior notice to, if not the consent of, the attorney. United States v. Springer, 460 F.2d 1344 (7th Cir. 1972). The court in *Springer, supra,* held that a constitutional right such as the right to counsel may be waived, although there is a higher standard imposed to show waiver of the presence of counsel once counsel has been appointed than before.

In Coughlan v. United States, 391 F. 2d 371 (9th Cir. 1968), cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139,[2] oral statements were testified to in court by police officers who interviewed the defendant in a jail interview room. The officers knew that the defendant was represented by counsel, but counsel knew nothing about the interview. As is true here, the defendant in *Coughlan, supra,* was fully warned, before he made any statements, of his *Miranda* rights; but he waived those rights. The court held that the statements made by the defendant were admissible into evidence, although it further indicated disapproval of the practice of interviewing prisoners in the absence of their attorneys.

2. In accord are Cephus v. United States, 122 U.S.App.D.C. 187, 352 F.2d 663 (1965); Reinke v. United States, 405 F.2d 228 (9th Cir. 1968); United States v. Dowells, 415 F.2d 801 (9th Cir. 1969). In *Reinke,* incriminating statements made by accused to the FBI were admissible though the Agent knew that counsel had been appointed for accused and failed to get authorization of counsel before proceeding with the interview, where accused initiated the conversation; appropriate *Miranda* warnings were given and accused fully understood his *Miranda* rights. It is not clear on this record that the Agent knew at the time he took the waiver and the oral statement that counsel had, in fact, been appointed.

The appellant, Cobbs, was fully cognizant of his rights at the time he made the incriminating statements. He freely and intelligently waived his constitutional rights by signing the written waiver and by making the oral statements to Agent McCarthy implicating himself in the robbery. If the officers' custodial interrogation was legally permissible, appellant's right to counsel was not violated. The District Court's holding that it is permissible for a law enforcement official to interview a defendant, even though the defendant has counsel and even though that counsel is not consulted as long as the proper *Miranda* warnings are given, as applied to the case before us, is the correct holding.

Although the practice of custodial interrogation in the absence of and without the permission of retained or appointed counsel is technically permissible, the practice is not commendable.[3] The relationship between lawyer and client risks significant erosion and the ability of counsel to effectively represent his client is seriously jeopardized when this kind of interrogation ensues. These risks would be materially reduced if in such situations the District Court, in inquiring into the voluntariness of such statements would expert the prosecution to demonstrate that the waiver of the presence of counsel was knowing and intelligent. Also, in cases where this issue is important, the Government's evidence in support of the voluntariness of the waiver should also include evidence to the effect that the accused, prior to making a statement, specifically acknowledged that he was aware that he was represented by an attorney. While we emphasize that we do not consider such evidence as mandatory, we do believe that the consideration of such evidence by the District Court is a stronger and, therefore, a more preferable basis upon which to conclude that the evidence in question should be received. Other Federal appellate courts have encountered the same problem with the same feeling. See, United States v. Smith, 7th Cir., 379 F.2d 628, 633, cert. denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486. In addition to the basic legal and ethical problems appearing in these cases, the economical paradox that is evident when one arm of Government pays money from its treasury to afford counsel to an accused (as in this case where court-appointed counsel is used), while another arm of Government uses money from its treasury in an effort to keep the accused and his lawyer apart, justifies without more the need for a greater showing by the Government of the usefulness of such evidence.

The incriminating statements made by the appellant in the case before us are admissible for, viewed in the light of the current authorities, the accused deliberately and voluntarily chose to speak with the FBI Agent and implicate himself in the robbery.

Agent McCarthy also testified that appellant made certain oral statements implicating himself in the crime under investigation while riding in the automobile from the place of arrest to the Federal Building in Pittsburgh. Appellant now contends that these statements should have been suppressed, alleging in substance that the statements were involuntarily and unlawfully coerced from him. This contention is unfounded. Although Agent McCarthy testified before the jury that he initiated interrogation of the appellant regarding the crime in the automobile after the "Advice of Rights" and "Waiver of Rights" form had been signed by Cobbs (and which appellant admitted signing), the incriminating statements were made by the appellant completely of his own volition. The statements were not prompted by any investigatory questioning on the part of Agent McCarthy. The appellant initiated the conversation by asking how much money had been

---

3. See, United States v. Wedra, 343 F. Supp. 1183, 1188 (D.C., 1972) and Coughlan v. United States, *supra*, indicating disapproval of the practice.

stolen. Agent McCarthy answered the question and Cobbs' unsolicited and freely offered response to the Agent's answer was "You mean he got that, too" and later, "I only got $150 or $175." There is no reason why these two statements should be suppressed.

■ Appellant contends that the testimony given in regard to Count II of the indictment does not support the burden of proof which the prosecution must carry to prove the charge. The issue presented is the sufficiency of evidence necessary to establish a violation of § 2113(d). The trial court, relying on United States v. Roach, 321 F.2d 1 (3rd Cir. 1963), defined the burden of proof as "simply a question of whether the lives of the victims are put in danger because jeopardy means danger." A jury may find that the jeopardy exists from the use of a deadly weapon during a robbery, even if there was no discharge of the weapon or the placing of it against the body. A finding in the instant case that the lives of Trude Smith and Margaret Morgan were put in jeopardy by the use of a dangerous weapon is certainly reasonable in view of the evidence presented. There was ample testimony received at trial demonstrating that the gun was used in seriousness and as an essential element of the robbery scheme. Both witnesses testified that the gun was exposed throughout the robbery, with the gunman brandishing the weapon in order to obtain compliance with his unlawful and fear-provoking dictates.

Sufficient evidence was presented to establish that the gunman placed the lives of the victims in jeopardy with the weapon, in violation of 18 U.S.C. § 2113(d).

The trial court's charge to the jury was proper and in accordance with the law.

The judgment of the United States District Court for the Western District of Pennsylvania will be affirmed.