**UNITED STATES of America, Appellant,**

v.

**Lloyd Eugene CROOK, Appellee.**

**No. 73-2038.**

United States Court of Appeals, Third Circuit.

Argued May 17, 1974.

Decided Aug. 2, 1974.

Van Dusen, Circuit Judge, dissented and filed opinion.

———◆———

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for appellant.

Edward H. Weis, Asst. Defender, Defender Association of Philadelphia, Federal Courts Div., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal by the United States pursuant to 18 U.S.C. § 3731 from an order of the district court granting the motion of defendant, Lloyd Eugene Crook, to quash an incriminating statement which he gave to agents of the Federal Bureau of Investigation on January

17, 1973. Crook is before the district court on an indictment charging robbery of a Wyncote, Pennsylvania bank, and the challenged statement admitted that he did so. The motion to suppress asserted (1) that the F.B.I. should have called Crook's attorney before they interrogated him, and (2) that his mental condition was such on January 17, 1973 that he could not appreciate the significance of the *Miranda* warnings given him and thus his waiver of *Miranda* rights was not voluntary. The district court held a hearing in which psychiatric evidence as to Crook's mental condition was presented, and concluded:

> "If the mental capacity of the defendant was the sole issue in this case I would hold that his mental capacity was such that there was no violation of his rights in obtaining the statement because of any mental condition arising out of any mental illness that the defendant may have had at that time, or of any mental incapacity, and I would hold, if that were the sole issue in this case, that the Government has met its burden of proof that the statement was validly obtained." Appendix at 90.

The court held, however, that the statement should be suppressed because the interrogation was in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). That holding is inconsistent with decisions of the Supreme Court and this court, and we reverse.

## I. THE MASSIAH ISSUE

On January 17, 1973, Crook was arrested in Peoria, Illinois pursuant to a warrant charging him with robbery of the Wyncote, Pennsylvania bank on December 22, 1970. He was taken to the Peoria F.B.I. office where a standard written advice of rights form was given to him. He read and signed this form which was witnessed by two F.B.I. agents. The form was not read to him. It contains all the warnings required by *Miranda,* and above the signature line appears the language:

> "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. *I do not want a lawyer at this time.* I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

Appendix at 52. (emphasis added). Crook was then asked if he committed the Wyncote robbery and he denied it. One of the agents told him that his sister had identified him as the person in the Wyncote bank surveillance photographs. He then responded "Well if you say its me, its me." Crook then answered specific questions which were reduced to a narrative confession which he signed.

■■ At the time of the interrogation Crook was awaiting sentence on an attempted bank robbery charge in Peoria, Illinois. Arrested on that charge on December 18, 1972, he had later been arraigned and Randall Moon, a Peoria attorney, had been appointed to represent him. Through Mr. Moon he had tendered a guilty plea on the Peoria charge on the basis of a recommendation by the government of a three-year probationary sentence. On January 17, 1973 the Peoria judge had not yet finalized this plea bargain by accepting the guilty plea. One of the F.B.I. agents who arrested Crook on the Wyncote charge was the case agent on the Peoria case and was aware that Mr. Moon represented him in that case. That agent was present during the January 17, 1973 interrogation. Following the execution of the signed statement, an attempt was made to call Mr. Moon, but he was not in his office. On the basis of the foregoing facts, which are essentially undisputed, the court ruled:

> "Clearly in this case the counsel representing the defendant in the Peoria bank robbery had an interest to protect in that pending proceeding. I would point out, however, that there is no contention and no evidence that the defendant was actively prevented

from contacting Mr. Moon, or that the statement was obtained by any type of physical or mental coercion in the classic meaning of the word.

I do not find in this case, considering the totality of all the circumstances, that the Government has met its burden to prove that the statement was properly obtained, and that the defendant and the accused did voluntarily intelligently and knowingly waive his right to counsel." Appendix at 99–100.

The totality of the circumstances is that Crook, whom the court found to be competent, uncoerced and unrestrained from calling an attorney, signed a waiver stating "I do not want a lawyer at this time," but that the agents knew he was represented by a lawyer in connection with another totally unrelated offense. The only additional factor to which the district court referred was the fact that the Peoria attorney had an interest to protect in that pending proceeding. Undoubtedly that interest was in having the Peoria court accede to the plea bargain. That factor is irrelevant to the admissibility of the statement in this proceeding in which the issue is the voluntariness of the *Miranda* waiver. Whether or not the interrogator knew the defendant had counsel in an unrelated case at the time of the waiver has nothing to do with whether the waiver was knowing and intelligent, so long as the defendant knew he had counsel. The relevant inquiry is not what the F.B.I. agent knew but what Crook knew and understood. No contention has been made that Crook was unaware, when he signed the waiver, that Moon represented him in connection with the Peoria case. The finding that the government has not proved that the statement was properly obtained after a valid *Miranda* waiver, resting as it does on the single factor that the F.B.I. agent knew Crook was represented by an attorney in an unrelated case, is clearly erroneous.

We are urged, however, that as a matter of law any interrogation by government agents of a defendant whom they know to be represented by an attorney, even in another case, is unlawful under Massiah v. United States, *supra*. The Supreme Court rejected such a rule in Hoffa v. United States, 385 U.S. 293, 309–310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and we recently followed *Hoffa* in United States v. Osser, 483 F.2d 727, 733–734 (3d Cir.), cert. denied, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973).

These additional observations of the district court are worthy of note:

"But I fail to see what good written opinions condemning certain police procedures are if they do not prevent repetition.

. . . . . .

I hope that it will have a prophylactic effect as to future interrogations." Appendix at 98.

These observations suggest that the district court looks upon any interrogation of a defendant represented by an attorney as unethical in the absence of the attorney's consent, and that the sanction for such an ethical violation is suppression. *See* United States v. Thomas, 474 F.2d 110, 112 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973); A.B.A., Code of Professional Responsibility, DR 7–104(A)(1) (1969). We share the district court's unease with the practice of talking to a represented defendant behind his attorney's back. *See, e. g.,* United States v. Cobbs, 481 F.2d 196, 200 (3d Cir.), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 204 (1973). But the Code of Professional Responsibility, assuming it should guide the conduct of F.B.I. agents as well as United States attorneys, can be enforced by sanctions only under our supervisory powers. *See* United States v. Springer, 460 F.2d 1344, 1354 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972). Those powers are subject to the control of Congress. In the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, tit. II, § 701, 82 Stat. 197, 211, Congress provided that "[i]f the trial judge de-

termines that the confession was voluntarily made it shall be admitted in evidence . . . ." 18 U.S.C. § 3501(a). Presumably the constitutionally mandated requirements of the *Miranda* decision survive that enactment. *See* United States v. Marrero, 450 F.2d 373, 379 (2d Cir. 1971) (Friendly, J., concurring), cert. denied, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972); C. Wright, 1 Federal Practice and Procedure § 76, at 121–22 (1969). We cannot, however, in exercising merely supervisory powers, disregard the congressional mandate of 18 U.S.C. § 3501(a). Since there was full compliance with *Miranda,* and hence with the fifth and sixth amendments, the district court is bound, in determining admissibility, by 18 U.S.C. § 3501(a). The statement should not have been suppressed for the reasons on which the district court relied.

## II. THE COMPETENCY ISSUE

 Crook urges that the order should nevertheless be affirmed because the district court erred in determining that he was competent, on January 17, 1973, knowingly and intelligently to make a *Miranda* waiver. *See* Collins v. Brierly, 492 F.2d 735 (3d Cir. 1974) (en banc). The court heard the testimony of three psychiatrists: Dr. Heller, who was court appointed, Dr. Thrasher, who was employed by the government, and Dr. Berman, for the defendant. All three agreed that Crook suffered from some form of mild chronic schizophrenia undifferentiated type. Their opinions as to his competency to make a valid *Miranda* waiver conflicted to some extent. We have independently examined the evidence as to Crook's mental condition. *See, e. g.*, Blackburn v. Alabama, 361 U.S. 199, 205 n. 5, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), and cases cited therein. We cannot say that the district court erred in concluding that the government met its burden of establishing a knowing and intelligent waiver. Thus we cannot affirm the suppression motion on that ground. Our conclusion that we cannot affirm on that ground, resting as

it does on the superior opportunity of the trial judge to observe the witnesses, does not preclude a renewal of Crook's competency contention at or before final hearing.

The order suppressing Crook's statement of January 17, 1973, will be reversed.

VAN DUSEN, Circuit Judge (dissenting):

I believe that the majority opinion, possibly due to an incorrect characterization of the reasoning of the district court, overrules *sub silentio* the guiding principles set forth in this court's decision in United States v. Cobbs, 481 F.2d 196, 200 (3d Cir. 1973), upon which the district court relied. Particularly because this is not an en banc decision, I respectfully dissent and would affirm the district court judgment on the facts of this record.

According to the district court, "[t]he critical issue in this case . . . is whether the waiver of the right to counsel should be held to be valid". After a careful analysis, the court found that considering the totality of the circumstances, the Government had failed to meet its burden of proving that the statement was properly obtained and that the defendant had voluntarily and knowingly waived his right to counsel. In making this finding, the court relied on the following factors: (1) although technically competent at the time of his interrogation to understand the nature of his constitutional rights and the meaning of his signed waiver, defendant was nevertheless suffering from mental illness, and the FBI agents who obtained the waiver and subsequent statement knew that he had previously been a patient in a mental hospital; (2) the *Miranda* warnings were given to defendant only in a written form, which he read and signed without any oral explanation from the agents; (3) defendant showed no awareness that he might be represented by Mr. Moon, a court-appointed lawyer located in the same city where he was arrested and who repre-

sented him on another bank robbery charge on which he was awaiting sentence in that district; and (4) the FBI agent failed to contact Mr. Moon prior to the interrogation, even though he knew that Mr. Moon represented defendant in the Peoria case and correctly assumed that he would represent him in any other legal trouble in that Illinois district at that time.

These last two factors seem to have been the most important considerations in the view of the district court, for much of its oral opinion is taken up with a discussion of United States v. Cobbs, *supra.* In *Cobbs,* this court held that a custodial interrogation of defendant after counsel had been appointed, but without notice to or permission of counsel, did not violate defendant's rights to remain silent and to have counsel prior to the interrogation where defendant had freely and intelligently waived those rights. However, the opinion went on to provide district courts with the following guidance:

"Although the practice of custodial interrogation in the absence of and without the permission of retained or appointed counsel is technically permissible, the practice is not commendable. The relationship between lawyer and client risks significant erosion and the ability of counsel to effectively represent his client is seriously jeopardized when this kind of interrogation ensues. These risks would be materially reduced if in such situations the District Court, in inquiring into the voluntariness of such statements would expect the prosecution to demonstrate that the waiver of the presence of counsel was knowing and intelligent. *Also, in cases where this issue is important, the Government's evidence in support of the voluntariness of the waiver should also include evidence to the effect that the accused, prior to making a statement, specifically acknowledged that he was aware that he was represented by an attorney. While we emphasize that we do not consider such evidence as mandatory,*

*we do believe that the consideration of such evidence by the District Court is a stronger and, therefore, a more preferable basis upon which to conclude that the evidence in question should be received."* (Emphasis added.)

*Id.* at 200. Relying on this language, the district court in this case found that there was no evidence that defendant was aware that Mr. Moon could represent him in this matter and considered this fact in reaching its conclusion that defendant's waiver of his constitutional rights was not knowing and intelligent.

In view of this focus on the question of the validity of defendant's waiver, I fail to understand how the majority opinion (at pp. 1379 and 1380) can characterize the district court's decision as resting on an application of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), a case never mentioned, much less relied on, by the district court. I can find nothing in the district court's analysis which conflicts with the holdings of Hoffa v. United States, 385 U.S. 293, 309–310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and United States v. Osser, 483 F.2d 727, 733–734 (3d Cir.), cert. denied, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973), for those cases were concerned with defining the scope of the right to counsel, not the voluntariness of a waiver. Nor do I read the district court's decision as embodying an exclusionary rule based on ethical considerations (see majority opinion at p. 1380). Although there is language in its oral opinion condemning the practice of taking a statement in the absence and without the knowledge of counsel, the district court's reliance on *Cobbs* makes clear that this factor was considered merely as evidence on the issue of the validity of the waiver.

Finally, I cannot agree that the district court's finding of an invalid *Miranda* waiver is clearly erroneous, "resting as it does on the single factor that the F.B.I. agents knew Crook was represented by an attorney in an unrelated case" (majority opinion at p. 1380). In the

first place, this assertion overlooks the three other factors relied on by the district court. See p. 1381 above. In particular, it ignores the finding that there is no evidence that defendant was aware that Mr. Moon could represent him in this case. Since *Cobbs* clearly places the burden on the Government to introduce evidence showing that prior to making a statement the accused "specifically acknowledged that he was aware that he was represented by an attorney," the district court properly considered this factor, even if it were true, as the majority opinion states (at p. 1380), that "[n]o contention has been made that Crook was unaware, when he signed the waiver, that Moon represented him in connection with the Peoria case." Furthermore, while it is literally correct that in considering the validity of the waiver, "[t]he relevant inquiry is not what the FBI agent knew but what Crook knew and understood," (majority opinion at p. 1380), the evidentiary principles set forth in *Cobbs* for determining the voluntariness of a waiver are applicable only where the court finds a custodial interrogation has occurred in the absence of and without the permission of counsel. Thus, the district court's discussion of the FBI agent's knowledge of the attorney-client relation between Mr. Moon and defendant and his failure to contact Mr. Moon was highly relevant, albeit indirectly, to its determination of the validity of defendant's waiver.

In summary, I believe the district court's decision in this case represents a conscientious and proper application of the above-quoted language in the *Cobbs* opinion. I recognize, of course, that this language is not, strictly speaking, part of the holding of that case. However, where, as in *Cobbs*, a panel of this court has attempted to lay down guidelines to assist in the resolution of a difficult and important constitutional issue, district courts are entitled to rely on them and should not be reversed for doing so without a full reconsideration of the original decision by the entire court. Thus, I do not believe the policies previously followed by this court permit reversal without out hearing of this case by all active judges. See F.R.App.P. 35(a) and paragraph M.1.b.(1) of Internal Operating Procedures (3d Cir.).