**UNITED STATES of America ex rel. Eddie JOHNSON and George Johnson, Petitioners,**

v.

**Robert HATRAK, Superintendent, Respondent.**

**Civ. A. No. 74–1845.**

United States District Court,
D. New Jersey.

July 15, 1976.

Roger A. Lowenstein, Federal Public Defender, Newark, N. J., for petitioners.

Burrell Ives Humphreys, Passaic County Prosecutor, Wayne, N. J., by Gary H. Schlyen, Asst. Prosecutor, Paterson, N. J., for respondent.

## OPINION

STERN, District Judge.

This is a petition for a writ of habeas corpus to compel the release of George and Eddie Johnson from state custody. Petitioners are brothers. They were jointly indicted for armed robbery, and convicted after jury trial in Superior Court in 1972. Petitioners commenced this lawsuit by filing a joint *pro se* petition and upon their request, this Court appointed counsel to represent them jointly. Petitioners have elected to proceed with four of the numerous grounds asserted in the original *pro se* petition.[1] The State has conceded, and the record demonstrates, that petitioners have exhausted their state remedies with respect to these four claims. *See* Title 28 U.S.C. § 2254(b); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Neither the State nor petitioners seek an evidentiary hearing in this Court. (Tr. 2/6/76 at 2); *United States ex rel. Williams v. Brierley,* 291 F.Supp. 912, 914 (E.D.Pa.1968).

Two of the claims put forward are applicable to both petitioners. Two claims apply only to Eddie Johnson. Although the original petition was filed jointly and the events complained of occurred before and during the same state trial, each petitioner is entitled to and has received individual consideration in this proceeding.

The crimes charged in the indictment occurred on the evening of August 28, 1971, when the patrons of a bar in Haledon were robbed by three armed men. An indictment was returned some months later by the Passaic County Grand Jury, charging petitioners, one Dennis Wilbely and a John Doe with various counts of robbery and armed robbery. Jury trial of this case was preceded by an eight-day *Wade-Simmons-Stovall* hearing conducted by the trial judge. At the close of the pretrial hearing, the trial judge made various rulings on the admissibility of identification evidence, and jury trial began.

Testimony before the jury lasted eight days. The State presented seventeen witnesses who were present in the bar at the time of the robbery. Eleven of these witnesses made in-court identifications of George Johnson. Eight of the State's witnesses identified Eddie Johnson in court. The State then presented the testimony of

1. Letter to the Court from Roger Lowenstein, Esquire, counsel for petitioners, dated August 12, 1975.

the investigating officer, Robert Del Vecchio. Del Vecchio described certain prior consistent photographic identifications in an effort to bolster the credibility of the in-court identifications of some of the witnesses. The State then rested its case.

Eddie Johnson presented the testimony of several witnesses. The first was an attorney. He testified that he had seen Eddie Johnson in his office several weeks before the robbery. At that time, according to the witness, Eddie Johnson had a shaven skull and a clean-shaven face. This testimony, if credited, would have served to impeach the in-court identifications of Eddie Johnson, none of which referred to a shaven pate and most of which referred to sideburns. Eddie Johnson next called a police detective to the stand. A proffer of testimony describing sound police practices in robbery investigations was rejected by the trial court. Eddie Johnson then rested without testifying.

George Johnson rested his case without presenting a defense. The third co-defendant presented several alibi witnesses and rested without testifying himself. After six hours of deliberation the jury convicted all three defendants on each count of the indictment.

Petitioners base their claim to the Writ on four grounds. First, they assert that they were denied their right to a jury determination of innocence or guilt by errors in the trial court's charge. Second, each petitioner claims to have been prejudiced by improper comment by the prosecutor and the trial court on his failure to testify. Third, Eddie Johnson contends that his prior criminal record was erroneously admitted into evidence on the State's case. Finally, Eddie Johnson argues that the trial court erred in not suppressing in-court identification testimony which was tainted by suggestive pretrial police conduct.

 The first claim for relief is equally applicable to both petitioners. It is grounded upon asserted errors in the trial court's charge to the jury. The State concedes that the trial court failed to instruct the jury on the essential elements of the crimes charged in the indictment. The Appellate Division of the Superior Court noted the omission, but affirmed on the application of New Jersey's plain error rule. N.J.R. 2:10–2; *State v. Johnson,* Nos. A–3185–71 and A–1476–72 (App.Div. May 29, 1974) at 5–6. Petitioners contend here that the charge deprived them of their constitutional right to a jury trial.

The Sixth and Fourteenth Amendments of the United States Constitution conferred upon each petitioner an absolute right to a jury trial, absent a valid waiver. *Duncan v. Louisiana,* 391 U.S. 145, 147–158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Such a trial must normally include a jury determination of each of the essential elements of the offenses charged in the indictment. *In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Christoffel v. United States,* 338 U.S. 84, 89–90, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949). *Cf. Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The trial record of this case, however, presents the issue of waiver. *See Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), 44 U.S.L.W. 4609, 4613–4614 (1976) (Powell, J., concurring).

As a matter of trial strategy neither petitioner contested the State's assertion that an armed robbery took place under the circumstances described by the State's witnesses. In his opening statement, counsel for Eddie Johnson made it clear to the jury that the only issue was identification:

I'm going to have to come back to you at the end of the case and complain, I think I will, about the police work that's done in this case. They could have done so much really to help us and they didn't. The proofs will show that one of the least experienced officers from Haledon Police Force was assigned to this armed robbery. . . .

. . . . .

Eddie Johnson doesn't fit the description of any of the people who were in the tavern on the night in question. . . . .

. . . . .

You'll see that they [the witnesses and victims] all agree that these three men had hair and sideburns that robbed that tavern. . . .

. . . . .

The police officer who handled this situation didn't have any desire to defend the roles of the holdup men. . . .

. . . . .

(Tr. 5/10/72, at 12–20) Counsel for George Johnson adopted a similar trial strategy:

It's a terrible crime that occurred. Something should be done about it. . . .

. . . . .

But these are witnesses that saw a crime, a crime of violence and a stealing, taking away someone else's possession. . . .

. . . . .

I'm going to tell about one witness, a woman who was beat up during this robbery. . . .

. . . . .

The witnesses were involved in a terrible crime. . . .

. . . . .

Three people walked into a bar. . . . George wasn't there.

(Tr. 5/10/72, at 25–30)[2] Thus the defense presented a united front to the jury in an effort to restrict the issues to the question of identification. The robbery itself was conceded, and the identity of the perpetrators was the sole issue for the trial. They maintained this strategy throughout the case.

At the close of all testimony the trial court convened a conference of all counsel outside the presence of the jury to discuss the forthcoming charge. At that time the trial judge stated his position on the charge:

[The Court]: I will draft the charge and submit it to counsel beforehand something like, so members of the jury, forget about what a robbery is, there was a robbery. Don't talk about the robbery. That doesn't matter, talk about the who was there, who was there. I'm going to hammer at that issue. I'm going to put it into their thoughts, I'm going to drive it in as deeply into their minds as I can.

[Counsel for Eddie Johnson]: Then really, there's no need to read the indictment nor to ask them separately whether there was an armed robbery or not and the only thing, it would seem to me, that has to be done, those elements out, the indictment can be out, everything stipulates that—

\* \* \* \* \* \*

(Tr. 5/18/72, at 9.9) Counsel for Eddie Johnson again stressed his desire that the charge be brief:

I think you hold their attention for about ten minutes longer than most of the judges in this courthouse and usually that's about ten minutes too little. And if we could streamline the charge we could rest assured that they understood and listened to a good part of it.

(Tr. 5/18/72, at 9.10) At no time during this conference did any defendant object to the proposed "streamlined" charge. On the contrary, the defendants evidently perceived that the narrowing of the issue was to their benefit.

In summation, counsel for all defendants reiterated their view that identification was the only issue before the jury:

There's no question this is a terrible crime. In addition, there was no need to hit people. There's no question about that. Mr. Kaplan [the prosecutor] opened and told you how heinous a crime this

2. Counsel for the third co-defendant, Dennis Wilbely (not a petitioner here) was even more explicit:

The facts are clear. There was a robbery. People had their money taken. They get up and tell you that, they tell you money was taken and what happened to them, and so forth. These are facts. These are facts they

will tell you. And those statements made by those witnesses will probably go unrebutted. There is no reason in my mind, and I speak again only for Wilbely, to disbelieve or to question at this stage or at any stage what the witnesses say as to the facts.

(Tr. 5/10/72, at 33)

was and I do not like it, you don't like it. We don't have to stand for it. . . .

George Johnson has been identified more often than either of the other two defendants. It is true. But how has he been identified? What is the value of the identification? Is it consistent with the holdup?

You can understand an identification is the sole issue and when you make an identification it should be linked to some factual representation.

(Counsel for George Johnson, Tr. 5/22/72, at 10.41, 10.49)

Something happened in that tavern. Three people held it up. It's undisputed. But I do not think that this has established anything about Eddie Johnson except that he probably wasn't there. These people had a very, very traumatic experience. None of us, I don't care how vivid our imaginations are, can imagine the fear that must grasp one's heart when a gun is pointed and told holdup, get against the wall, get the money out.

(Counsel for Eddie Johnson, Tr. 5/22/72, at 10.64, 10.65)

The trial judge then delivered his charge, during the course of which he instructed the jury as follows:

Each accused has pleaded not guilty to this indictment or formal written complaint. Indeed, it is these very pleas which raise the issue that I previously called guilt or non-guilt. The indictment accuses each of these defendants of having committed the crime of armed robbery. That general charge is divided into two parts, the crime and the link.

The crime of armed robbery was indeed committed against each of the seventeen patrons who were in Augie's Tavern at about 9:30. The Prosecutor has proved it with no counterproof from the defense. Each of the victims named in the indictment was forced to give up money after being put in fear. This indictment has centered in the second part of the indict-

ment, accusation, that it was all of these defendants who were the robbers. The State has the burden of proving links between each defendant and the undisputed crime.

The three defendants are being tried together but each of them is entitled to be considered by you separately from the others in your deliberation and in light of the total proof, the question as to each defendant then is whether the Prosecutor has proved beyond a reasonable doubt that he was one of the robbers. The State must make the link, must put him there. A defendant has no burden of proof to show that he was not present at the time and place.

(Tr. 5/22/72, at 10.112–10.113) The trial judge went on to charge on reasonable doubt and the presumption of innocence. (Tr. 5/22/72, at 10.117–10.119) No exception was taken to this portion of the charge. (Tr. 5/22/72, at 10.122–10.129)

While the trial court may have erred in failing to charge the jury on the elements of the offenses described in the indictment, on this record petitioners may not justly claim to have been prejudiced by any such omission. Petitioners rely on numerous cases which they contend establish the proposition that the consent of the defense is irrelevant in reviewing such an error. In each case cited for this proposition, however, the facts indicated at best an equivocal consent, or the absence of any consent. *See United States v. Manuszak,* 234 F.2d 421, 423–425 (3rd Cir. 1956); *United States v. Gollin,* 166 F.2d 123, 125–127 (3rd Cir. 1948), *cert. denied* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); *Byrd v. United States,* 119 U.S.App.D.C. 360, 342 F.2d 939, 941 n. 6 (1965). Where the record clearly indicated that the defense stipulated to the issue in question before the jury, courts have declined to find prejudice to the defendants. *See, e. g., United States v. Boone,* 401 F.2d 659, 662–663 (3rd Cir. 1968), *cert. denied,* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969); *United States v. Goings,* 517 F.2d 891 (8th Cir. 1975); *United States v. Bard,* 408 F.2d 347 (6th Cir. 1969).

*Cf. United States v. Pravato,* 505 F.2d 703, 704–705 (2nd Cir. 1974); *Malone v. United States,* 238 F.2d 851 (6th Cir. 1956).

 .The object of a trial is to resolve contested issues of fact by the legal fact-finding process. While it is the exclusive burden of the prosecution to prove all essential elements of the crime charged, it has no burden to go forward with proofs of matters of fact clearly, knowingly and intelligently conceded by the defense. The trial judge is in a similar position. Ordinarily he is required to instruct the jury as to the legal requisites of every element of every crime charged and of every lesser included offense, in addition to charging a host of general legal principles applicable to the case as a whole, such as presumptions of innocence, reasonable doubt, inference, circumstantial evidence and *mens rea.* All this must be accomplished within the space of an hour or two. If such instructions to a lay jury are to afford them any help, or indeed to make any sense at all, the Court should not direct the jurors' attention in fact-finding to elements which they have heard the lawyers concede to be beyond dispute. To require a trial judge to charge the jury on such matters, notwithstanding such concessions, and thereby to instruct the jury to decide facts which the parties themselves do not dispute, would inevitably result in confusion in the jury room and could even undermine the integrity of the remainder of the charge. While the judge, of course, may not take a jury issue away from the jury, and while he may not require stipulations or concessions, once such agreements have been voluntarily made the judge, in the interests of justice, should direct the jury's attention to what is in dispute and away from what is not. Courts sit to resolve controversies, not to create them.

Petitioners made a considered tactical decision at trial not to contest the State's proof concerning the occurrence of the crimes at Augie's Tavern. This decision was not plainly illogical. They attempted to limit the issues to the more restricted question of identification. The record demonstrates that they prudently sought to capture the jury's attention on the defense's one viable issue: the identity of the robbers, not the fact of robbery. They not only did not object to the proposed charge, they actively sought to "streamline" it for their own forensic purposes. *See Dennis v. United States,* 341 U.S. 494, 500 n. 2, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); *cf. United States ex rel. Johnson v. Johnson,* 531 F.2d 169 (3rd Cir. 1976). The Court finds no error here.

 The second asserted ground for relief is that the Court and prosecutor erred in making statements before the jury constituting improper comment on the defendants' failure to testify. In summation, the prosecutor made the following comment:

What I will go into I feel is important, the defense. And make no mistake, a defense good or bad, doesn't obviate for it to prove guilt beyond a reasonable doubt because it doesn't. The State must on its case, as Mr. Osofsky [attorney for George Johnson] said, prove a prima facie case, guilt beyond a reasonable doubt. If what you hear in the defense reinforces that belief that's something else, but it's not the duty of the defense to prove innocence nor did they attempt to.

(Tr. 5/22/72, at 10.103–104) Petitioners claim that the final sentence in the quoted portion of summation was constitutionally impermissible comment. In addition, they point to the comment made by the trial judge during his charge that certain matters were proved " . . . with no counterproof from the defense" as imposing an additional burden on their exercise of the privilege of silence. *See generally, Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States ex rel. Howard v. Rundle,* 452 F.2d 904, 906 (3rd Cir. 1971).

The appropriate test for evaluating the comments to which petitioners object here was stated in *United States ex rel. Leak v. Follette,* 418 F.2d 1266, 1268–1270 (2nd Cir. 1969), *cert. denied,* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970). As Judge

Friendly noted in *Leak,* the customary formulation of the standard is:

> Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?

418 F.2d at 1269 (citations omitted). *Accord, United States v. Chaney,* 446 F.2d 571, 576 (3rd Cir. 1971). Under the circumstances of this case, this Court holds that neither challenged comment so clearly conveyed the impermissible inference to the jury as to mandate the issuance of the Writ.

The consistent trial strategy of all three defendants was to leave the bulk of the State's evidence uncontroverted and deliberately unchallenged. Much of this evidence could easily have been challenged by witnesses other than the defendants. Although no defendant testified, only George Johnson elected to present no defense at all. Eddie Johnson called several witnesses. The jury heard from one that Eddie Johnson had been bald shortly before the robbery. The third codefendant, Dennis Wilbely, presented several witnesses in an effort to establish an alibi defense. Against this backdrop, neither the comment of the prosecutor (which was directed generically at "the defense") nor that of the trial judge "naturally and necessarily" called attention to the failure of the defendants to testify. The first portion of the remark preceding the prosecutor's comment was no more than a confused restatement of the presumption of innocence and the allocation of the burden of proof. His assertion that the defense did not attempt to prove innocence, unfortunate though it was, was clearly not intended to convey to the jury the suggestion that it penalize the defense for a failure to go forward. In fact the defense did put in testimony in an effort to "prove" innocence. The jury was surely not misled, nor was their attention inexorably directed to the petitioners' failure to testify by this brief remark.

With respect to the trial judge's statement, it too was not of such a nature as to clearly point out the defendants' failure to testify. Notwithstanding the higher duties imposed upon the presiding officer of a trial, the remark which the judge made was no more and no less than what the defense lawyers told the jury themselves, in opening and in summation. Its context does not support the assertion that it focused attention on the defendants' failure to take the stand. Relief on this claim must therefore be denied to both petitioners. *Compare United States v. Williams,* 172 U.S.App.D.C. 290, 521 F.2d 950, 952–954 (1975); *United States v. Hill,* 508 F.2d 345, 347 (5th Cir. 1975); *Haberstroh v. Montanye,* 493 F.2d 483, 485 (2nd Cir. 1974); *United States v. Anderson,* 481 F.2d 685, 701–702 (4th Cir. 1973), *aff'd* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

The third claim for relief relates only to the case of Eddie Johnson. He now asserts that his prior criminal record was erroneously placed before the jury on the Government's case-in-chief. The question arose indirectly during the testimony of Officer Del Vecchio. Del Vecchio was describing to the jury the circumstances of certain out-of-court photographic identifications made by the State's witnesses. The trial court, during the *Wade-Simmons-Stovall* hearing, precluded the State from introducing the actual photographic array into evidence at trial, since the photograph of Eddie Johnson (S–10) was a mug shot and bore the legends "Rob" and "Mad Dog Johnson." (Tr. 4/25/72, at 20–23) Despite the court's ruling, Del Vecchio testified on direct examination, in pertinent part, as follows:

[Prosecutor]:

Q. All right. Now, when Sergeant Gamble arrived, what happened next?

A. I informed him also of what had taken place, people that were injured, and then we had left the tavern, we went down to Paterson Police Headquarters.

Q. All right, go ahead.

A. And Sergeant Gamble picked out three—he picked three photographs. He got them from Paterson Record Bureau.

(Tr. 5/17/72, at 7.87) The witness briefly described his use of the photographs, and was interrupted by Eddie Johnson's motion for a mistrial at side-bar. (*Id.* at 6.90) The court denied the motion and the witness resumed testifying:

Q. All right. And what, if anything, did you show Mr. John Dunkirk?

A. I showed him a series of photographs, mug shots.

(*Id.* at 6.126) Although the defense apparently took issue with this later statement by Del Vecchio as well, the court directed that argument be reserved by Del Vecchio as well, the court directed that argument be reserved for a later side-bar and the argument was not explicitly renewed. No cautionary instruction was requested by the defense. Petitioner contends that these references to the nature and source of S–10 (the photograph of Eddie Johnson) require that the Writ issue.

It is of course the general rule that evidence of the prior criminal record of an accused may not be admitted into evidence for the purpose of demonstrating his propensity to commit crime. Testimony concerning the existence of a mugshot, however, presents this issue only indirectly. There is potential prejudice when a jury learns that an accused has been photographed by the police at a time before his arrest in the pending case. Any such prejudice is, however, clearly much less than would be occasioned by the introduction of a certified prior conviction. Recognizing this distinction, most courts have permitted the introduction of appropriately masked mugshots of an accused where the photographic evidence is relevant to the issue of the fairness and reliability of a prior out-of-court identification. *See Government of Virgin Islands v. Petersen,* 507 F.2d 898, 902 (3rd Cir. 1975); *United States v. Gimelstob,* 475 F.2d 157, 162 (3rd Cir.), *cert. denied,* 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62 (1973); *United States v. Hines,* 470 F.2d 225, 227–228 (3rd Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973). *Cf. State v. LaRocca,* 81 N.J.Super 40, 45–46, 194 A.2d 578 (App.Div.1963).

The trial court considered these issues at the pretrial hearing. It determined that although the prior photographic identifications could be described, the mugshot of Eddie Johnson should not go to the jury. It did not. The only reference to the nature of the photograph which the witnesses selected from the array was the blurted comment of Officer Del Vecchio. There is no doubt that the prosecution was at fault in permitting a police witness to take the stand without clear and unambiguous instructions not to mention the nature or source of the photograph of Eddie Johnson. So much was clearly necessary to effectuate the trial court's prior ruling. Nevertheless, the quantum of prejudice flowing from this lapse is not so great as to warrant a finding of deprivation of due process. No cautionary instruction was sought from the court. Petitioner chose to confine his objections to the comments to his motion for a mistrial.

This Court is unable to conclude that the denial of the motion for a mistrial deprived petitioner of his right to a fair trial. The receipt of evidence in a state proceeding, however erroneous, is ordinarily not grounds for habeas corpus relief. *Ralls v. Manson,* 503 F.2d 491, 497 (2nd Cir. 1974) (Lumbard, J., concurring); *United States ex rel. Mertz v. State of New Jersey,* 423 F.2d 537, 540 (3rd Cir. 1970). The contention that the jury necessarily inferred from the brief and oblique comments of Officer Del Vecchio that Eddie Johnson had a propensity toward crime, as reflected in a prior conviction, is too slender a reed upon which to predicate a claim that the trial was fundamentally unfair. It was not constitutional error for the trial court to deny the motion for a mistrial. *Cf. Donnelly v. DeChristoforo,* 416 U.S. 637, 642–645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Accordingly, relief must be denied on this ground as well.

Finally, Eddie Johnson claims that he was denied due process of law when certain witnesses were permitted to identify him in court. He asserts that their identifications were tainted by impermissibly suggestive

pretrial identification procedures and should have been suppressed.

Eddie Johnson was identified at trial by eight of the seventeen eyewitnesses to the crime: John Dunkirk, George Florence, Ida Dunkirk, Mary Shuart, John Pritchard, Carmello Iacobelli, Carmen Feravola and Theresa Limandri. Officer Del Vecchio later offered testimony relating to prior consistent photographic identifications made by two of the eight identifying witnesses, John Dunkirk and George Florence. Petitioner now contends that five of these in-court identifications should not have been permitted to reach the jury. He contends that the prior consistent photographic identifications by both witnesses should also have been suppressed. In order to evaluate the basis for this contention, the lengthy testimony at the pretrial suppression hearing must be briefly summarized.

The tavern was robbed on August 28, 1971. The crime was investigated by the Haledon Police. Within hours of the event the police had selected a photograph of Eddie Johnson for display to witnesses. Since only general descriptions of the robbers were obtained from the victims, this selection was apparently based on the fact that Eddie Johnson was a suspect in another robbery with a similar *modus operandi.* Officer Del Vecchio displayed a photospread consisting of three pictures to John Pritchard and the Eardleys within hours of the robbery. One of the three pictures was S–10, Eddie Johnson's mugshot. Despite the suggestive legend ("Rob"), none of the three witnesses selected the photograph as depicting one of the robbers.

During the next few days other photographic arrays were displayed to witnesses. These photospreads, ranging from ten to sixteen pictures, contained a larger assortment of pictures than the three originally displayed on the night of the robbery. S–10 appeared in each such display. John Dunkirk and George Florence each selected S–10 from these larger arrays on September 1. Although photo displays were shown to other witnesses, and although each display included S–10, no other photographic identifications of Eddie Johnson were made.

On the morning of September 3, four of the witnesses were brought to the Paterson Municipal Court by Officer Del Vecchio and Chief Martin of the Haledon Police Department. Each of these witnesses (John Pritchard, Dorothy Pritchard, Ida Dunkirk and Mary Shuart) had been exposed to a photospread containing S–10. None had selected *Eddie* Johnson although Mary Shuart and Dorothy Pritchard had previously selected photographs of *George* Johnson. The witnesses were seated in the courtroom during a series of some ten arraignments. They were asked to nod to the officers if they recognized anyone. Nine arraignments took place involving relatively minor offenses. None of the arraignments involved multiple defendants. At this point the petitioners George and Eddie Johnson were brought out of the lockup and their joint arraignment on another charge of armed robbery of a different tavern was moved. As the Johnson brothers were brought out, Chief Martin left the witnesses and moved to the front of the courtroom to confer with the Magistrate. The charges were read, and a verbal altercation with respect to the high bail set ensued between Eddie Johnson and the Magistrate. The bail determination and the subsequent argument involved some discussion of Eddie Johnson's prior criminal record. Three of the four witnesses present at this viewing identified Eddie Johnson as one of the robbers. All four identified George Johnson as another.

Immediately after the arraignment viewing, the authorities undertook to arrange a "line-up" for the four witnesses. Petitioners and various others who had been arraigned on the same day were placed in the line-up, clothed as they were for the arraignments. Eddie Johnson was identified by the witnesses who had previously identified him in the Magistrate's court minutes before.

After eight days of testimony in the *Wade-Simmons-Stovall* hearing, the trial judge heard extensive oral argument and

delivered a lengthy bench opinion. The judge divided his consideration of the issues raised into three discrete rulings: the admissibility of the photographic identifications; the admissibility of the arraignment viewings and identifications; and the admissibility of the "line-up" identifications.

The photographic identifications were held admissible over the objections of defense counsel, who contended that the circumstances under which they were made were impermissibly suggestive.

The second issue addressed by the trial judge was the conduct of the arraignment viewing. Despite the defense's contention that under the circumstances the viewing was inherently unfair, the trial judge ruled that the evidence of the identifications made by three witnesses at the arraignment was admissible. He conditioned this ruling on the proviso that the State was bound to permit the defense to prove that Eddie Johnson had been tried for and acquitted of the charges brought at the arraignment. Under these circumstances the State elected not to use the evidence of the arraignment identifications. Finally, the trial judge ruled that the line-up conducted shortly after the arraignment was not unfair and that the resulting identifications were admissible. He did, however, exercise his discretion under N.J.R.Ev. 4 to exclude it as merely cumulative.[3] Eddie Johnson clearly advanced his theory that the cumulative process of pretrial identifications rendered the five witnesses involved incompetent to identify Eddie Johnson in court, but the New Jersey courts have rejected this argument.

It is the cumulative effect of the procedures that most concerns this Court. The inquiry must be divided into two issues: were the pretrial identification procedures employed impermissibly suggestive, and if so, did the State show by clear and convincing evidence that the witnesses had an independent basis for the challenged in-court identifications? *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 739 (3rd Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973).

■ Two of the witnesses whose in-court identifications are challenged here were exposed only to a single photographic viewing of Eddie Johnson in the weeks following the robbery. John Dunkirk and George Florence both identified S-10 from a group of some sixteen photographs displayed to them by Officer Del Vecchio several days after the robbery. Each related the circumstances of this identification at the pretrial hearing and at trial, as did Officer Del Vecchio. It is conceded that there were elements of suggestion in the framing of the photographic array, since only Eddie Johnson's photograph bore the legend "Rob." Indications of other crimes appeared on the face of other photographs in the group. After a careful review of the witnesses' testimony concerning the circumstances under which they viewed the array, and the police officers' testimony regarding its composition, this Court is nevertheless satisfied that the trial judge ruled correctly in permitting the men to testify, subject as they were to cross-examination. *Simmons v. United States, supra*, 390 U.S. at 384, 88 S.Ct. 967. The testimony of Florence and Dunkirk identifying Eddie Johnson in court and recounting the circumstances of the earlier consistent photographic identification bears no constitutional infirmity.

■ The testimony of John Pritchard, Mary Shuart and Ida Dunkirk is another matter. The pretrial identification proceedings involving these witnesses demonstrate many of the elements of suggestive-

---

**3.** N.J.R.Ev. 4 provides as follows:

 4. *Discretion of judge to exclude admissible evidence*

The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury.

ness likely to lead to a "very substantial likelihood of irreparable misidentification," *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Each of these witnesses saw the robbers for a few minutes in the relatively dim lighting of the tavern. None of these witnesses gave clear and accurate descriptions of the robbers to the police. Mary Shuart and Ida Dunkirk were both exposed to a photospread containing S–10 within days of the robbery. Neither selected S–10 as representing a robber. John Pritchard was exposed to photo arrays containing S–10 twice, also within days of the crime. He too failed to pick out that photo as depicting a robber.

It was at this point that these three witnesses, along with Dorothy Pritchard, were taken to Municipal Court for the surreptitious viewing of George and Eddie Johnson. For Eddie Johnson, this viewing was more closely akin to a show-up *Stovall v. Denno, supra*, than to a line-up. The witnesses expected to see the robbers. Two of them had already selected photographs of George Johnson. The arraignments were routine and minor with the significant exception of the Johnson brothers' case, an armed robbery virtually identical to that which the witnesses had seen. As if to eliminate any doubt whatsoever, the police chief went to the bench as the case was called. The bail on Eddie Johnson was set at a high figure, and his prior criminal record was aired.

For petitioner Eddie Johnson, this set of circumstances was highly suggestive. He was brought before the witnesses and arraigned on a similar charge in the company of a man whose picture had already been identified. His criminal record was discussed and high bail was set. Then a "line-up" was staged involving virtually the identical cast which had passed before the witnesses moments before.

A view of a suspect at an unrelated preliminary hearing by a witness in a case still under investigation may be unduly suggestive and a violation of due process. *United States ex rel. Riffert v. Rundle*, 464 F.2d 1348, 1349–1351 (3rd Cir. 1972), *cert. denied*, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484

(1974); *United States v. Lipowitz*, 407 F.2d 597, 599 (3rd Cir. 1969). Here the staged viewing of Eddie Johnson in the company of a previously-identified culprit, as they both answered to similar but unrelated charges before a judge, was highly suggestive. The subsequent line-up, rightly characterized by the trial judge as "cumulative," merely served to reinforce the previously weak identifications made by the three witnesses. As the Supreme Court commented in *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 1129, 22 L.Ed.2d 402 (1969):

The suggestive elements in this identification procedure made it all but inevitable that [the witness] would identify petitioner whether or not he was in fact "the man." In effect, the police repeatedly said to the witness, "*This* is the man." See *Biggers v. Tennessee*, 390 U.S. 404, 407 [88 S.Ct. 979, 980, 19 L.Ed.2d 1267] (dissenting opinion). This procedure so undermined the reliability of the eyewitness identification as to violate due process.

In view of the earlier failure of each of the three witnesses to make an identification of S–10, and in view of the limited descriptions they gave to the police, the record does not demonstrate by clear and convincing evidence that an independent basis existed for their in-court identifications of Eddie Johnson. *United States v. Cobbs*, 481 F.2d 196, 199 (3rd Cir. 1973), *cert. denied*, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *United States ex rel. Thomas v. New Jersey, supra*. Cf. *Brathwaite v. Manson*, 527 F.2d 363, 367 (2nd Cir. 1975), *cert. granted*, 425 U.S. 957, 96 S.Ct. 1737, 48 L.Ed.2d 202, 44 U.S.L.W. 3624 (1976). The witnesses should not have been permitted to identify Eddie Johnson in court. His right to due process of law was violated when they made such identifications before the jury.

The State raises the question of harmless error. Of the seventeen eyewitnesses to the crime, eight were able to identify Eddie Johnson as the perpetrator. Two of these witnesses had made prior con-

sistent photographic identifications under permissible circumstances, and the jury heard testimony describing those identifications. Three others identified the petitioner in court without any prior contact. It was only three of the eight, John Pritchard, Mary Shuart and Ida Dunkirk, who made impermissible identifications.

This Court agrees with the State's contention that the error in permitting the three witnesses to identify Eddie Johnson before the jury was harmless. Five of the eight witnesses who identified Eddie Johnson in court did so under circumstances that were constitutionally unobjectionable. The prior consistent "line-up" identifications made by the three challenged witnesses (John Pritchard, Mary Shuart and Ida Dunkirk) were excluded by the trial judge. The State chose not to offer the evidence of their prior consistent arraignment identifications. Only the weakest form of identification reached the jury with respect to the three challenged witnesses, unbolstered by any prior consistent statements:

> The difference for the prosecution between being allowed to offer evidence of a pretrial identification and being remitted to an in-court identification is substantial. A jury would naturally regard an identification made shortly after the crime as much more probative than an in-court identification. This is especially true of the perfunctory type of identification where the defendant is sitting at the counsel table; indeed it would seem that only the apparent weakness of this kind of identification, along with its traditional character, saves it from condemnation as being itself impermissibly suggestive.

*Brathwaite v. Manson, supra,* at 367 n.6. Under these circumstances, although it was error to permit the three witnesses to identify Eddie Johnson before the jury, the error was harmless; and the "likelihood of irreparable misidentification," *Neil v. Biggers, supra,* is minimal. *See, e. g., Monteiro v. Picard,* 443 F.2d 311 (1st Cir. 1971); *Jones v. Director of Patuxent Institution,* 351 F.Supp. 913 (D.Md.1972).

Accordingly, the petitions for Writs of Habeas Corpus will be denied.