UNITED STATES of America,
Plaintiff-Appellee,

v.

Carlos LEYBA, Defendant-Appellant.

No. 74–1037.

United States Court of Appeals,
Tenth Circuit.

Argued Aug 20, 1974.

Decided Oct. 24, 1974.

Certiorari Denied Feb. 18, 1975.
See 95 S.Ct. 1139.

Winston Roberts-Hohl, Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Before HILL and DOYLE, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

* TALBOT SMITH, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

TALBOT SMITH, Senior District Judge.

The appellant herein was convicted by a jury of violations of 18 U.S.C. § 2113 (a), (b) and (d), hereinafter summarized, arising out of the robbery at gunpoint of the First National Bank of Santa Fe, New Mexico. His principal defense was alibi, rejected by the jury. He argues on appeal that "it was an abuse of discretion for the Court to deny [his] motion for a new trial," and objects, as well, to the court's admission of certain evidence going to his physical characteristics and to his photographic identification.

Viewed most favorably to the Government, the evidence established that before noon on October 15, 1973, two individuals, one of whom bore "a very strong resemblance" to the defendant, were observed by one Miguel Romero donning disguises in a car parked outside the bank. The two entered, announced that this was a holdup, or robbery, and Mr. Sexton, the bank's manager, was ordered by defendant to lie on the floor. Sexton's identification of the defendant was positive. He was personally acquainted with him by reason of previous contacts in connection with loans. With Sexton at the time was a customer, Mr. Lucero, who, after hearing in court defendant speak words used in the holdup, testified, " * * * it's the same voice. And by his looks I can show you he's the one that had the gun and everything. I could recognize him just by looking at him now." The robbers fled in their car, which belonged to defendant's sister. A short time later, after a chase, the car was stopped "in Mrs. Padilla's garden." The passenger was arrested by Officer Sisneros, but the driver, identified by Sisneros as the defendant, escaped on foot. We need not detail further evidence adduced at the trial, including defendant's fingerprints, his hair traces, and his clothing. The evidence was overwhelming and the jury's verdict, as we have noted, was guilty.

The defense tendered was that of two alibis. One alibi, the Romero-Carter version, was that somewhere around noon on October fifteenth they had driven defendant from the College of Santa Fe to the neighborhood where defendant's sister lived. The other alibi, that of Mrs. Hakkila, was that she saw defendant, with his sister, on the campus of the College of Santa Fe around noon, closer to one o'clock, on the 15th. These alibis, because of the areas involved, were argued by the Government to be essentially inconsistent. The jury rejected both.

Defendant moved for a new trial, submitting therewith certain affidavits which purported to bolster the Romero-Carter, rather than the Hakkila alibi. Defendant, recognizing "the rule that a new trial will be granted only with caution and only for abuse of discretion will denial of such a motion be reversed[,] United States v. Gleeson, 411 F.2d 1091 (10th Cir. 1969)," urges such abuse of discretion. The ground therefor is that since at trial "he could not successfully rebut the damaging effects of the government's cross-examination of his chief alibi witnesses," he should have another trial, where, if his affidavits are to be believed, he might be more successful. The ground, we note, is not that of newly discovered evidence but of "new witnesses." They would present, he explains, "evidence inadvertently overlooked by the defendant who, throughout the trial, relied upon his abiding conviction of innocence." Thus he did not, he states in his brief, "communicate the existence of other witnesses," those whose affidavits he now tenders to rebut the government's case.

But the rebuttal of the government's case must be by trial, not by affidavit. As we held in Wheeler v. United States, 382 F.2d 998, 1002 (10th Cir. 1967):

It is too well settled for discussion that a new trial is not warranted by evidence which, with reasonable dili-

gence, could have been discovered and produced at the trial.

In defendant's affidavit, attached to his motion, he suggests an additional reason for not producing at trial the witnesses he now produces by affidavit, namely, that he was "too tired" during the trial "for [his] mental facilities to function properly" and that it was not until he was returned to his cell and rested that his memory came back to him. Should, at any time during a trial a defendant become physically incapacitated he may, by appropriate motion, request appropriate relief. We find no such motion on the record before us, nor is the refusal of such suggested as an issue on appeal.

■ Entirely apart from the issue of diligence, however, it is pertinent to note that, even if receivable on properly established grounds, the evidence submitted therein must, for the grant of a new trial,

"be more than impeaching or cumulative, must be material to the issues involved, and must be such as would probably produce an acquittal." United States v. Gleeson, 411 F.2d at 1094 (10th Cir. 1969).

United States v. Perea, 458 F.2d 535, 536 (10th Cir. 1972).

The affidavits before us fall far short of the standards here enunciated and we find no abuse of discretion in the trial court's denial of the motion made.

■ Defendant also urges error in the admission of the testimony of an F.B.I. agent. The procedure of the bureau, it was testified, is to obtain a physical description of a suspect whether any admissions or statements are made or not. Agents Rommel and Jochem went to defendant's cell the day after his arrest to interview him. At this time, the government concedes, "apparently * * * he [Leyba] had been visited by an assistant state public defender who had advised Leyba to make no statements to the authorities." Defendant responded to two questions ask-

ing his height and weight but said further that he did not want to talk with them. This testimony as to height and weight was elicited on Agent Jochem's direct examination, and its use is argued to be a violation of our holding in United States v. Thomas, 474 F.2d 110 (10th Cir. 1973), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). In *Thomas* we condemned the practice of agents conferring with a prisoner, even with his consent, and taking a statement from him after counsel had been assigned and in his absence. It was pointed out therein that the practice did not necessarily involve a constitutional issue but rather a violation of the canons of ethics, which we refused to remedy by a reversal of Thomas' conviction.

The difficulty with applying the *Thomas* doctrine to the facts before us is that no "statement" of any kind within the meaning of the issues presented was taken from the defendant. He merely acknowledged the existence of physical characteristics clearly observable even to a casual onlooker. His response to the questions, height and weight, was not communicative in nature. Such disclosure, like the disclosure "of name and address is an essentially neutral act." [1]

■ Defendant argues that the gallery of "mug shots" which had been displayed to witnesses Romero and Sisneros was designed "to put the pointing finger on Carlos Leyba." We have carefully reviewed the record and are satisfied from the totality of the circumstances there disclosed, that the photographs were not "so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process." Belton v. United States, 429 F.2d 933 (10th Cir. 1970); *see* United States v. Coppola, 486 F.2d 882, 887 (10th Cir. 1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); United States v. Woodring, 446 F.2d 733, 735 (10th Cir. 1971).

The defendant was charged in two counts under three subsections of the

---

1. California v. Byers, 402 U.S. 424, 432, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9 (1971).

Bank Robbery Act, 18 U.S.C. § 2113. Count One charged violations of 18 U.S.C. § 2113(a), taking $13,853 from a bank by force and violence and by intimidation, and 2113(d), placing life in jeopardy by the use of a dangerous weapon in so taking. Count Two charged a violation of 2113(b), taking $13,853 from a bank with intent to steal. Defendant was sentenced to fifteen years imprisonment on Count One and to ten years concurrently on Count Two.

■ It is argued to us that these separate penalties under the various subsections of the Bank Robbery Act are improper, whether imposed consecutively, Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), or concurrently, United States v. Von Roeder, 435 F.2d 1004, 1010 (10th Cir. 1971). On the Government's concession, we remand to the trial court for the purpose of correcting the sentence by vacating the sentence on Count Two.

The judgment is affirmed but the cause is remanded for the purpose of correction of sentence.