MATTER OF CHEN

In Deportation Proceedings

A-20747054
A-19870278

*Decided by Board October 20, 1975*

(1) Respondent's Arrival-Departure Record, Form I-94, turned over to a Service investigator during a preliminary interrogation of respondent outside her home, was not tainted by the absence of a *Miranda*-type warning and is admissible in evidence in deportation proceedings since *Miranda* is not applicable to civil deportation proceedings and, moreover, at the time of the interrogation respondent was neither in custody nor under any compulsion to answer questions. Further, since Form I-94 is essentially regulatory and noncriminal in nature, it would be admissible in evidence even if respondent had been in a custodial setting and *Miranda* were applicable to civil deportation proceedings.

(2) The interrogation of respondent, without prior notice to respondent's counsel, was not a violation of 5 U.S.C. 500(f), nor of Disciplinary Rule 7-104(A)(1) of the American Bar Association's Code of Professional Responsibility.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor/ student (spouse of student as to female)—remained longer.

ON BEHALF OF RESPONDENTS:
Stanley R. Lapon, Esquire
678 Massachusetts Avenue
Cambridge, Massachusetts 02139

ON BEHALF OF SERVICE:
John Midanek
Appellate Trial Attorney

In a decision dated October 25, 1974, the immigration judge found the respondents deportable, but granted them the privilege of voluntary departure. The respondents, who challenge the admissibility of certain evidence used against them, have appealed from that decision. They have also submitted a motion to remand the record in order to give them the opportunity to apply for adjustment of status under section 245 of the Immigration and Nationality Act. The appeal will be dismissed, and the motion will be denied.

The respondents, husband and wife, are natives and citizens of China. The evidence of record is clear, convincing, and unequivocal that the respondents are aliens who were admitted to the United States as

480

nonimmigrants, and that they have remained beyond the authorized length of their stays.

The respondents nevertheless contest their deportability. They allege that the documentary evidence used to establish deportability either was obtained illegally or was the fruit of evidence obtained illegally. The respondents therefore contend that this documentary evidence should have been excluded from consideration by the immigration judge, and accordingly that the evidence properly introduced does not establish deportability.

The challenged evidence was given to the Service by the female respondent during an inteview in August of 1974. Of this evidence, only Exhibit 10, the Arrival-Departure Record (Form I-94) relating to the female respondent was introduced during the hearing. The documentary evidence used to establish the male respondent's deportability was already in the Service's possession at the time of the interview with the male respondent's wife, and the Service was already aware of the male respondent's identity, residence, and alien file number. The Service therefore did not require any of the information obtained from the female respondent in order to produce the evidence of the male respondent's deportability which was introduced at the hearing.

The Service, however, did use Exhibit 10, the Form I-94, to establish the female respondent's deportability. Although the female respondent's affidavit indicates that the Service obtained only the passports of the respondents during the August 1974 questioning, counsel contends that the Form I-94 was also then given to the Service.

The female respondent's affidavit indicates that she was briefly questioned outside her home by a Service investigator, and that her children were present during the questioning. At the request of the investigator, the female respondent went inside her home to get some relevant documents, presumably including the Form I-94, and then delivered these documents to the investigator. The investigator retained the documents and departed. It is not alleged that the investigator ever entered the respondent's home.

Counsel for the respondents initially alleges that the questioning of the female respondent was done in violation of the principles established in *Escobedo* v. *Illinois*, 378 U.S. 478 (1964), and *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Counsel specifically argues that there is a right to counsel during the preliminary stages of an administrative immigration investigation, and that the Service was required to give the *Miranda* warnings to the female respondent before questioning her.

As counsel recognizes, however, the courts have not applied *Miranda* and *Escobedo* to civil deportation proceedings. See *Chavez-Raya* v. *INS*, 519 F.2d 397 (C.A. 7, 1975); *Jolley* v. *INS*, 441 F.2d 1245 (C.A. 5, 1971), cert. denied, 404 U.S. 946 (1971); *Lavoie* v. *INS*, 418 F.2d 732

(C.A. 9, 1969), cert. denied, 400 U.S. 854 (1970); *Nason* v. *INS*, 370 F.2d 865 (C.A. 2, 1967). Of more importance in this case is the simple fact that the female respondent was not interviewed while she was either in custody or under any other compulsion to answer questions. The female respondent was free to terminate the interview at any time, and she even returned to the interior of her home during the course of the questioning. The Service did not violate any of the female respondent's constitutional rights in obtaining the document which counsel seeks to suppress.

We also note that Exhibit 10, the Arrival-Departure Record (Form I-94), is a prescribed alien registration form. 8 CFR 264.1(a). Section 264(e) of the Act requires that [e]very alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration . . . issued to him. . . ." These cards are essentially noncriminal in nature, *United States* v. *Sacco*, 428 F.2d 264 (C.A. 9, 1970), cert. denied, 400 U.S. 903 (1970), and their production in the normal immigration inquiry is not prevented by the Fifth Amendment privilege against self-incrimination. *United States* v. *Campos-Serrano*, 430 F.2d 173 (C.A. 7, 1970), aff'd on other grounds, 404 U.S. 293 (1971). Thus, the immigration officer's request to see the Form I-94 was proper, even if we assume *arguendo* that the female respondent was in a custodial setting, and that *Miranda* is applicable to civil deportation proceedings. See *Matter of Yau*, 14 I. & N. Dec. 630 (BIA 1974).

Counsel also attacks as a violation of professional ethics the Service's use of information gathered as a result of the questioning of the female respondent. In this regard, counsel relies on 5 U.S.C. section 500(f),[1] and on Disciplinary Rule 7-104(A)(1) of the American Bar Association's Code of Professional Responsibility.

We find counsel's reliance on 5 U.S.C. section 500(f) to be misplaced. Section 500(f) simply requires that any *notice* or other *written* communication directed at a represented participant before an agency be given to the representative. This provision does not purport to limit the investigatory powers of immigration officers or to require notice to an alien's attorney before the alien may be questioned.

Counsel contends that the Service violated Disciplinary Rule 7-104(A)(1)[2] when it interviewed the female respondent without notice to counsel and procured Form I-94 from her. We reject that contention.

---

[1] Counsel specifically relies on Public Law 89-332, 79 Stat. 1281. Public Law 89-332, however, was repealed by the legislation which created 5 U.S.C. section 500(f). See Public Law 90-83, 81 Stat. 195.

[2] DR 7-104(A)(1) of the American Bar Association's Code of Professional Responsibility provides:

Communicating With One of Adverse Interest.

It is clear that DR 7-104(A)(1) was not violated. The Service, which had reason to believe that the female respondent was an alien, was authorized by section 287(a)(1) to interrogate her as to her right to be or to remain in the United States, and to require identification. *Matter of Yau*, 14 I. & N. Dec. 630 (BIA 1974).

In addition, we note that, with one exception, the courts have declined, in criminal cases, to exclude from consideration statements taken in apparent violation of DR 7-104(A)(1). See *United States* v. *Crook*, 502 F.2d 1378 (C.A. 3, 1974), cert. denied, 419 U.S. 1123 (1975); *Moore* v. *Wolf*, 495 F.2d 35 (C.A. 8, 1974); *United States* v. *Masullo*, 489 F.2d 217 (C.A. 2, 1973); *United States* v. *Springer*, 460 F.2d 1344 (C.A. 7, 1972), cert. denied, 409 U.S. 873 (1972); *United States* v. *Four Star*, 428 F.2d 1406 (C.A. 9, 1970), cert. denied, 400 U.S. 947 (1970); *Coughlan* v. *United States*, 391 F.2d 371 (C.A. 9, 1968), cert. denied, 393 U.S. 870 (1968); *Wilson* v. *United States*, 398 F.2d 331 (C.A. 5, 1968), cert. denied, 393 U.S. 1069 (1969). See also *United States* v. *Cobb*, 481 F.2d 196 (C.A. 3, 1973), cert. denied, 414 U.S. 980 (1973). The Tenth Circuit, which established an exclusionary rule in *United States* v. *Thomas*, 474 F.2d 110 (C.A. 10, 1973), cert. denied, 412 U.S. 932 (1973), has limited the scope of that *prospective* rule. See *United States* v. *Leyba*, 504 F.2d 441 (C.A. 10, 1974), cert. denied, 420 U.S. 934 (1975); *United States* v. *Thomas*, 475 F.2d 115 (C.A. 10, 1973). We therefore conclude that any evidence obtained as a result of the questioning of the female respondent was properly admitted.

The respondents finally seek a remand of the record in order to apply for adjustment of status under section 245 of the Act. The respondents seek adjustment of status as nonpreference immigrants, and the female respondent claims to satisfy the labor certification requirements of section 212(a)(14) as an "investor" within the contemplation of 8 CFR 212.8(b)(4).

The evidence presented in conjunction with the motion to remand fails to set forth a prima facie case under 8 CFR 212.8(b)(4). The female respondent has not shown that she meets the one-year training or experience requirement for the "investor" exemption. She presently appears to manage a Chinese restaurant. Her experience, however, is not related to the *management* of any enterprise.

The decision of the immigration judge was correct. The appeal will be dismissed and the motion will be denied.

---

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is *authorized by law to do so*. (Emphasis added.)

**ORDER:** The appeal is dismissed, and the motion to remand is denied.

*Further order:* Pursuant to the immigration judge's order, the respondents are permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's order.

**Irving A. Appleman, Member, Concurring:**

I concur in the majority decision. However, I am concerned that our holding that reversal is not warranted on the ground of a failure to communicate with counsel, should not be taken out of context. The failure to notify counsel of record occurred during a preliminary interview of the female respondent, and prior to the issuance of an order to show cause. No abuse of due process, or gross miscarriage of justice, has been shown. The overwhelming weight of authority is that there is no exclusionary rule in these circumstances even in a criminal proceeding, let alone this administrative immigration proceeding.

Notwithstanding this, it would be regrettable if the Service viewed the decision as endorsement of any general practice of interviewing aliens, without advising known counsel of record. Apart from the ethical considerations alluded to in the majority decision, and as a purely practical matter, it should be apparent that such conduct opens up the possibility of challenges on the basis of abuse of due process and that under some factual situations not too difficult to imagine, a review tribunal may so hold (cf. *Chlomos* v. *INS* C.A. 3, 516 F. 2d 310 (1975).