

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2008

# Carreon v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2870

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Carreon v. Atty Gen USA" (2008). *2008 Decisions.* Paper 724.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/724

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2870
_____

JUANITO CARREON,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A 91-506-665)
Immigration Judge: Daniel A. Meisner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2008
Before: FUENTES, ALDISERT and GARTH, Circuit Judges

(Opinion filed: August 4, 2008)
_____

OPINION
_____

PER CURIAM

Juanito Carreon, an alleged native and citizen of the Philippines, petitions for

review of a final order of the Board of Immigration Appeals ("BIA"), ordering his

removal from the United States.

On or about November 4, 2002, Carreon applied for adjustment of status or permanent residence based on the Legal Immigration Family Equity ("LIFE") Act.[1] On March 28, 2005, United States Citizenship and Immigration Services ("USCIS") notified Carreon by letter that the Department intended to deny his application because he had failed to provide evidence that he entered the United States before January 1, 1982, and continued residence through May 4, 1988, as required by the statute. (Joint Appendix ("App.") at 102.)[2]

On May 5, 2005, Carreon was interviewed by USCIS in conjunction with his LIFE legalization application. At the interview, USCIS determined that Carreon was not eligible for permanent residence under the LIFE Act and Carreon was thus instructed by the officer conducting the interview to sign a statement indicating that he "entered the United States for the first time on or about August 7, 1987 . . . using a non-immigrant B-2

---

[1] In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA"), which created a legalization program that "allow[ed] existing undocumented aliens to emerge from the shadows" and gain legal residency in the United States. McNary v. Haitian Refugee Ctr., 498 U.S. 479, 483 (1991). IRCA provided undocumented aliens who had resided continuously in the United States since January 1, 1982, with the opportunity to apply to the INS for legal resident status. See 8 U.S.C. § 1255a; INA § 245(i). The LIFE Act was enacted on December 21, 2000. Pub. L. No. 106-554, § 1101, 114 Stat. 2763 (codified as amended at 8 U.S.C. § 1255 (Dec. 21, 2000)). "It extended the grandfathering provision of [the IRCA] § 245(i), offering adjustment of status to anyone present in the United States, legally or illegally, who had a petition for an immigrant visa submitted on his or her behalf by April 30, 2001." Piranej v. Mukasey, 516 F.3d 137, 140 n.5 (2d Cir. 2008).

[2] Carreon was given thirty days to submit evidence in opposition to the intended denial and in support of his application for adjustment of status which he apparently failed to do.

2

visa" and that he "voluntarily wish[ed] to withdraw the adjustment of status application that [was] filed on October 13, 2001." (App. 106.) The statement also contained Carreon's admission that he was "not present in the United States on January 1, 1982, in unlawful status" and that he understood that he was not qualified to receive benefits under the provisions of the LIFE Act. (Id.)

Carreon was placed in removal proceedings on July 11, 2006. (App. 155.) The Notice to Appear ("NTA") alleged that he was an arriving alien paroled into the United States at a port of entry on or about May 29, 2002, for a period of one year until May 28, 2003, to pursue his application of adjustment of status, and that he voluntarily withdrew his application for adjustment of status on May 5, 2005. As an alien inadmissible due to invalid entry documentation, he was charged with removability. 8 U.S.C. § 1182(a)(7)(A).

Carreon appeared before the IJ on February 23, 2006, and again on March 1, 2006. He denied all the factual allegations and moved to terminate the removal proceedings. The IJ entered into the record Carreon's motion to terminate, his withdrawal of his adjustment application and the USCIS denial. The Government sought to question Carreon about his nationality and immigration status; however, on the advice of his attorney, Carreon refused to answer any questions as to his nationality or alienage. The Government then sought to establish alienage using various other documentation, including evidence Carreon had provided pursuant to his application for adjustment of

3

status under the LIFE Act regulations. Through his attorney, Carreon objected to the admission of any documents associated with his LIFE application on the basis of confidentiality provisions set forth in the regulations that govern INA § 245(a). See 8 C.F.R. § 245a.21.

The IJ was not convinced that the LIFE Act was subject to the same confidentiality requirements as INA § 245(a), nor that Carreon's voluntary withdrawal of his application for adjustment of status was entitled to confidentiality. Nonetheless, the IJ did not rule on the basis of that documentation. Instead, the IJ concluded that the Arrival or Departure document, Form I-94, which Carreon submitted in Anchorage, Alaska, on May 29, 2002, and which contained Carreon's name and designated his country of citizenship as the Philippines, (App. at 96), was sufficient documentation to establish alienage and to shift the burden to Carreon to establish lawful status in the United States.[3] Carreon did not attempt to satisfy this burden, and the IJ therefore ordered Carreon removed from the United States as an arriving alien. The BIA affirmed without opinion, and Carreon filed a timely petition for review. Because the BIA affirmed the decision of the IJ without

---

[3] Between 1999 and 2002, the Immigration and Naturalization Service ("INS") (now the Department of Homeland Security) provided Form I-94—Departure or Arrival Record—as temporary proof of status, and accompanied the alien's visa. See Etuk v. Slattery, 936 F.2d 1433, 1438 (2d Cir. 1991); United States v. Ndiaye, 434 F.3d 1270, 1278 (11th Cir. 2006). "The I-94 documented the non-immigrant classification of the alien, such as tourist, or visitor for pleasure or business or student. The alien's classification was also listed on his or her visa, and both the I-94 and visa were placed in the alien's passport and discussed with the alien by INS at the point of entry into this country." Ndiaye, 434 F.3d at 1278.

4

opinion, we review the decision of the IJ.  See Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003).

Carreon contends that the IJ erred in holding that his withdrawal of his adjustment of status application and Form I-94 were not covered by the confidentiality provisions in 8 C.F.R. § 245a.21.[4]  He further argues that the IJ erred in ordering Carreon removed as an arriving alien seeking admission because a legalization applicant who enters on an advance parole or Form I-94 document cannot be charged as inadmissible, but only as a deportable alien.[5]  The Government argues that substantial evidence supports the IJ's finding of Carreon's alienage based solely on the Form I-94 Arrival-Departure Record.[6]

_____

[4]Carreon does not dispute that Form I-94 is sufficient to prove his alienage.  Both the Board and several Courts of Appeal have found Form I-94 sufficient to establish alienage. See, e.g., United States v. Pahlavani, 802 F.2d 1505, 1506 (4th Cir. 1986) (finding I-94, standing alone, sufficient to establish alienage); see also Matter of Chen, 15 I. & N. Dec. 480, 483 (BIA 1975); Mariscal-Sandoval v. Ashcroft, 370 F.3d 851, 853 n.4 (9th Cir. 2004) (Form I-94 is "proof of the bearer's current immigration status and the time period during which his stay in this country is authorized."); United States v. Hammoude, 51 F.3d 288, 292 (D.C. Cir. 1995) (acknowledging Form I-94 as evidence of identification).

[5]Carreon also argues that the IJ erred in holding that the LIFE legalization provisions may not entitle Carreon to the same confidentiality protections that exist for legalization applications under INA § 245A.  However, the IJ did not hold that § 245A's confidentiality provisions do not apply to LIFE application materials.  We therefore decline to rule on the applicability of the confidentiality provisions in 8 C.F.R. § 245a.21 to the LIFE legalization statute.

[6]The Government notes that Carreon's passport was also submitted as evidence and definitively establishes Carreon's alienage.  Carreon appears to assert that his passport was also "information furnished pursuant to [his] application for adjustment of status" and thus subject to any confidentiality restriction.  (Pet's Br. at 15.)  However, we need not resolve this issue as the IJ did not rely on Carreon's passport in concluding that Carreon was removable.

5

Because the IJ ordered Carreon removed solely on the basis of the Form I-94 document, we confine our discussion to whether the Form I-94 that Carreon submitted upon entry to the United States is subject to the confidentiality provisions in 8 C.F.R. § 245a.21, and whether the IJ properly considered Carreon inadmissible.

As the Government points out, even assuming that the confidentiality provisions governing INA § 245(a) apply equally to the additions to the statute pursuant to the LIFE Act, the confidentiality provision only extends to "information furnished pursuant to an application for permanent resident status under the [regulations]." 8 C.F.R. § 245a.21(b). Carreon argues that Form I-94, the advance parole document, was generated or produced in conjunction with his LIFE legalization application; however, there is no evidence to support this claim. Carreon filled out Form I-94 on May 29, 2002, when he arrived in Anchorage. He did not file his LIFE Act application until just over five months later, on or about November 4, 2002. Carreon therefore did not "furnish" the "information" therein, "pursuant to" his LIFE Act application for adjustment of status, as required by the confidentiality regulations.[7] Instead, he furnished that information pursuant to his inspection and parole into the United States. Accordingly, the IJ properly considered Carreon's Form I-94 as proof of his alienage.

Carreon also argues that the IJ erred in describing him as an "arriving alien"

_____

[7]"Pursuant to" means "following upon, consequent and conformable to; in accordance with." See United States v. Copeland, 381 F.3d 1101, 1107 (11th Cir. 2004) (citing Oxford English Dictionary (2d ed. 1989)).

seeking admission because an applicant for adjustment of status under the LIFE Act regulations cannot be charged with inadmissibility. Carreon relies on two Ninth Circuit Court of Appeals cases, Sissoko v. Rocha, 440 F.3d 1145, 1153 (9th Cir. 2006), and Espinoza-Gutierrez v. Smith, 94 F.3d 1270 (9th Cir. 1996), for this proposition; however, both cases are inapposite. Unlike the appellant in Sissoko who was already a temporary resident when he was granted advance parole to attend a funeral in Senegal, Carreon was not a legalization applicant who left on advance parole while the application was pending and returned after a brief trip. Cf. Sissoko, 440 F.3d at 1150. Likewise in Espinoza-Gutierrez, the appellant was a legalization applicant who flew to Mexico during the pendency of her application without first requesting advance parole from INS. 94 F.3d at 1277. Carreon, however, entered the United States for the first time on May 29, 2002, at which time he was granted one year of advance parole. He applied for adjustment of status five months later. Thus, his legalization application could not have been pending on the day that he entered the United States. Moreover, Carreon's legalization application was withdrawn on May 5, 2005. Because his application was no longer pending on July 11, 2006, the date of his NTA, he could no longer be considered an applicant under the LIFE Act.

Finally, we note that Carreon's year grant of advance parole status did not change his status as an arriving alien. "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the [Immigration and Nationality] Act, and even after any

7

such parole is terminated or revoked." 8 C.F.R. § 1.1(q).  Thus, the IJ properly

considered Carreon an "arriving alien" subject to removal.

For the foregoing reasons, we will deny the petition for review.